IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

KERRY FUGATE,

Plaintiff,

v.                                              CIVIL ACTION NO.   2:17-cv-00559

FRONTIER WEST VIRGINIA, INC.,

Defendant.


MEMORANDUM OPINION AND ORDER


Pending is Defendant's Partial Motion to Dismiss the Amended Complaint.   (ECF No. 22.)   The motion will be **GRANTED**.

## I.   BACKGROUND

The following facts are drawn from the Amended Complaint.   For purposes of the Partial Motion to Dismiss, they are regarded as true.

Plaintiff Kerry Fugate began working for Defendant Frontier West Virginia, Inc. ("Frontier")[1] in 1998.   (Compl. ¶ 7.)   Over the course of the next decade, he met or exceeded performance standards and received favorable performance reviews from his employer.   In 2008, Plaintiff's mother grew ill.   Plaintiff developed serious health conditions of his own during the same period.   Between tending to his mother's condition and nursing his own illness, Plaintiff

---

[1] Frontier claims that Plaintiff misidentifies his former employer, arguing that Plaintiff was employed by Citizens Telecom Services Company LLC, a Frontier Communications subsidiary.   Plaintiff does not address this contention in his response to the Partial Motion to Dismiss. For purposes of the instant motion, the Court identifies Plaintiff's employer as Frontier West Virginia Inc., the name used by the Amended Complaint.

required several weeks of leave under the Family Medical Leave Act ("FMLA") in 2009 and 2010. Over time, Plaintiff's absence from work led Frontier to advance him along the company's progressive discipline plan. On January 14, 2015, Frontier terminated Plaintiff's employment. Plaintiff alleges that his discipline and termination were motivated by unlawful retaliation.

Plaintiff brought suit against Frontier on January 12, 2017, invoking the Court's federal question jurisdiction under 28 U.S.C. § 1331. He amended the Complaint on March 16, 2017. The Amended Complaint contains six counts. Count I alleges retaliatory discharge in contravention of a substantial public policy of the State of West Virginia; Counts II and III allege interference with FMLA rights and FMLA retaliation; Count IV alleges disability discrimination under the West Virginia Human Rights Act, W. Va. Code § 5-11-1 *et seq.*; Count V alleges negligent infliction of emotional distress ("NIED"); and Count VI alleges outrage. Frontier moves to dismiss Counts I, IV, V, and VI. Having been fully briefed, the Partial Motion to Dismiss is ready for disposition.

## II.    LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those

allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. DISCUSSION

### A. Count I—Wrongful Discharge in Violation of Substantial Public Policy

Frontier puts forward a two-pronged argument in support of dismissal of Count I. It begins with the observation that Plaintiff was a union employee covered by a collective bargaining agreement while employed with Frontier. Frontier argues that the common law retaliatory discharge claim alleged in Count I, first recognized in *Harless v. First National Bank*, 246 S.E.2d 270 (W. Va. 1978), is available only to at will employees. Second, Frontier contends that the FMLA—a federal statute—cannot serve as the source of public policy animating a *Harless* claim. Because the Court finds that *Harless* does not apply to contract employees like Plaintiff, Frontier's second argument is moot.

The Supreme Court of Appeals of West Virginia has recognized a cause of action for wrongful discharge in violation of public policy as a limited exception to the employment at-will doctrine. *Harless*, 246 S.E. 2d at 275. In *Harless*, West Virginia's highest court held:

> The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

Syl. Pt. 1, *id.* at 271. Citing this holding, Frontier argues that contract employees may not maintain a policy-based wrongful discharge action. The Supreme Court of Appeals of West Virginia has not parsed the question beyond the *Harless* decision, though it recently intimated that an employee governed by a collective bargaining agreement may not be considered at will for

purposes of bringing a *Harless* claim.  *Frohnapfel v. ArcelorMittal USA LLC*, 772 S.E.2d 350, 354 (W. Va. 2015).

   *Frohnapfel* presented the issue of whether a particular West Virginia statute established a substantial public policy for purposes of a policy-based wrongful discharge claim.  Initiating a discussion of the *Harless* decision, the court noted that it would "not opine on whether Mr. Frohnapfel qualified as an at-will employee in view of the collective bargaining agreement that controlled the terms of his employment."  *Id.* at 354 n. 9.   Nevertheless, *Frohnapfel* cited a case holding that an employee governed by a collective bargaining agreement is not an at-will employee capable of bringing a common law retaliatory discharge claim.  *Id.* (citing *Lambs v. Briggs Mfg.*, 700 F.2d 1092, 1093–94 (7th Cir. 1983)).   Other courts have similarly so held.   *See Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446–47 (8th Cir. 1994) (where provisions of collective bargaining agreement supported conclusion that plaintiff was a contract employee, Missouri public-policy exception to the at-will doctrine did not apply); *Claggett v. Wake Forest Univ.*, 486 S.E.2d 443, 448 (N.C. 1997) (dismissing wrongful discharge action brought by a university professor covered by contract and subject to discharge only for just cause); *see also Cullen v. E.H. Friedrich Co., Inc.*, 910 F. Supp. 815, 821 (D. Mass. 1995) (cause of action for wrongful discharge in violation of public policy was available only to at-will employees and did not apply to employee covered by a collective bargaining agreement).   Whatever the limits of *Frohnapfel*'s analysis, the case reaffirms the settled principle that wrongful discharge claims under *Harless* are available only to at-will employees. 772 S.E.2d at 354.

   Strangely enough, Plaintiff concedes this point.   Plaintiff admits that he was not an at-will

4

employee while employed with Frontier.[2]  In his response, Plaintiff merely asserts—correctly enough—that the Supreme Court of Appeals of West Virginia has never held that a unionized employee may not maintain a *Harless* action.   Yet the notion runs contrary to the overt purposes for recognizing the wrongful discharge claim in the first place, namely, to temper the harsh effects of the at will employment doctrine.   246 S.E.2d at 271.   In the typical case, union employees working under the protection of a collective bargaining agreement are not employed at will.  Plaintiff also notes that collective bargaining agreements do not prevent union employees from pursuing claims under the WVHRA.   (Pl. Resp. at 3–4 (citing *Bailey v. Norfolk & W. Ry.*, 527 S.E.2d 516 (W. Va. 1999)).)    Plaintiff's attempt to analogize the WVHRA is unpersuasive.   The WVHRA does not distinguish between at will and contract employees, but casts a wide net in outlawing unlawful employment practices with respect to any individual.   *See* W. Va. Code § 5-11-9.   The common law cause of action recognized in *Harless*, on the other hand, does not have statutory underpinnings and is available only to at will employees.   Any expansion of the claim is best left to the West Virginia courts.

Plaintiff concedes that he was not an at-will employee while employed with Frontier, and a public policy wrongful discharge action is not available to him.   Count I is **DISMISSED**.

---

[2] For example, the collective bargaining agreement governing Plaintiff's employment compelled Frontier to abide by a tiered grievance resolution procedure.   (Def. Partial Mot. to Dismiss Ex. 1.)   While Plaintiff did not attach the collective bargaining agreement to the Amended Complaint, the Court may consider the collective bargaining agreement at this stage of the proceedings because (1) it was attached to Frontier's Partial Motion to Dismiss and was integral to Plaintiff's pleading, and (2) Plaintiff does not dispute its authenticity.   *Elswick v. Daniels Electric Inc.*, 787 F. Supp. 2d 443, 445 n. 1 (S.D. W. Va. 2011) (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n. 1 (4th Cir. 2006)).

B.      *Count IV—Disability Discrimination*

With regard to Count IV, Frontier raises three affirmative defenses in support of dismissal. Frontier begins by arguing that Plaintiff previously litigated his disability discrimination claim as a member of a class action in West Virginia state court, and that the doctrines of res judicata and release now act as a bar.   In the alternative, Frontier asserts that the statute of limitations has run on Plaintiff's disability discrimination claim.

The Court notes that res judicata, release, and statute of limitations are affirmative defenses, Fed. R. Civ. P. 8(c)(1), and thus need not be "anticipate[d] and negate[d]" in a plaintiff's pleading.   *Perry v. Merit Sys. Prot. Bd.*, 137 S. Ct. 1975, 1986 n. 9 (2017).   "It follows . . . that a motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense[.]"   *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).   There is an exception when the facts supporting the defense appear on the face of the complaint.   *Id.*   Further, "[w]hen entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact."   *Q Int'l Courier Inc. v. Smoak*, 441 F.3d 214, 216 (4th Cir. 2006) (citing *Andrews v. Daw*, 201 F.3d 521, 524 n. 1 (4th Cir. 2000)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (items subject to judicial notice are properly considered in determining whether to grant a Rule 12(b)(6) motion).

Because Frontier's res judicata defense is dispositive, the Court focuses its attention there. "Generally, the preclusive effect of a judgment rendered in state court is determined by the law of the state in which the judgment was rendered."   *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d

156, 162 (4th Cir. 2008).    As the class action at issue here was adjudicated in West Virginia state

court, the Court will apply the res judicata rules of that State.    Like its federal counterpart, West

Virginia's iteration of the res judicata rule contains three elements:

> First, there must have been a final adjudication on the merits in the prior action by
> a court having jurisdiction of the proceedings. Second, the two actions must involve
> either the same parties or persons in privity with those same parties. Third, the cause
> of action identified for resolution in the subsequent proceeding either must be
> identical to the cause of action determined in the prior action or must be such that
> it could have been resolved, had it been presented, in the prior action.

*Blake v. Charleston Area Med. Ctr., Inc.*, 498 S.E.2d 41, 44 (W. Va. 1997).    The factors are given

broad application.    In reviewing identical factors in the federal context, for instance, the Fourth

Circuit noted that "[t]he preclusive affect of a prior judgment extends beyond claims or defenses

actually presented in previous litigation."    *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057

(4th Cir. 1991).    The doctrine of res judicata bars claims that were "raised and fully litigated" as

well as claims that could have been litigated in the prior proceeding, "regardless of whether they

were asserted or determined."    *Peugeot Motors of Am., Inc. v. E. Auto Distribs., Inc.*, 892 F.2d

355, 359 (4th Cir. 1989) (citation omitted).    Principles of res judicata may be applied against class

members so long as "invocation of the bar is consonant with due process."    *Johnson v. Gen.*

*Motors Corp.*, 598 F.2d 432, 436 (5th Cir. 1979) (citing *Hansberry v. Lee*, 311 U.S. 32, 61 (1942)).

As stated, Frontier's res judicata defense arises from a class action in which Plaintiff took

part.    That action, styled *Moore, et al. v. Verizon West Virginia Inc., et al.*, Civil Action No. 11-

C-307, involved class claims of disability discrimination arising under the WVHRA.    The class

representatives were all employees of Frontier or Verizon West Virginia, Inc., its predecessor.

*Moore* came to its conclusion with entry of final judgment just weeks after Plaintiff filed the instant

lawsuit.    The final judgment order, proposed settlement agreement, and affidavit submitted by

Plaintiff indicating his intent to join the class action—all filed in the Circuit Court of Harrison County, West Virginia—are attached as exhibits to Frontier's Partial Motion to Dismiss. (Def. Partial Mot. to Dismiss Ex. 2.) As Plaintiff does not contest their authenticity, the Court takes judicial notice of these records. *Q Int'l Courier*, 441 F.3d at 216.

Plaintiff admits that the first and second elements necessary for res judicata to apply are present here. He does not dispute his membership in the *Moore* class, nor that the disability claims raised in that action reached a final adjudication on the merits. The Court agrees. On March 9, 2009, the Circuit Court of Harrison County, West Virginia granted the joint motion for approval of the settlement agreement and dismissed with prejudice the disability claims of the class representatives and participating class members. (Def. Partial Mot. to Dismiss Ex. 2 at 4.) This final judgment on the merits has preclusive effect. Further, *Moore* meets the "same parties" requirement. According to the *Moore* settlement agreement, the class was comprised of present or former employees of Verizon or Frontier who had a disability and suffered discrimination on account of their disability. (*Id.* Ex. 3 at ¶ 3.47.) By affidavit executed January 29, 2016, Plaintiff notes that he has reviewed the class definition and considers himself a putative member of the class. (*Id.* Ex. 4 ¶ 6.) Plaintiff's participation in the class action against Frontier satisfies the "identity of the parties" requirement; further, his affidavit evidencing an intent to join the lawsuit assuages any due process concerns.

As to the third element, however, Plaintiff denies that the disability discrimination claim alleged here is identical to the claim adjudicated in *Moore*. Frontier argues that because the *Moore* class period extended from July 20, 2009 to November 9, 2016, Plaintiff's disability discrimination claim reached a final adjudication on the merits in the *Moore* action. Frontier adds

8

that in consideration for the settlement negotiated therein, Plaintiff released Frontier from any liability for claims that "were or could have been alleged" in the *Moore* action, including disability-related claims under the WVHRA.    Plaintiff counters that the facts giving rise to the instant disability discrimination claim occurred prior to July 20, 2009, the start date of the *Moore* class period.    This assertion is suspect; Plaintiff's pleading alleges nothing of the sort.    Plaintiff's pleading alleges generally that he required several weeks of leave "between approximately 2009 and 2010." (Am. Compl. ¶ 11.)    Frontier's alleged acts in retaliation could only have occurred after Plaintiff took FMLA leave.

Even accepting Plaintiff's strained reading of the factual allegations, identity of causes of action exists here.    The test for deciding whether causes of action are the same is whether the claim asserted in the current litigation "'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment.'"    *Laurel Sand & Gravel*, 519 F.3d at 162 (quoting *Pittston Co. v. United* States, 199 F.3d 694, 704 (4th Cir. 1999)).    Plaintiff's claim in the *Moore* action arose out of the same transaction as the instant case.    Plaintiff alleges that as a Frontier employee, he received discriminatory treatment in retaliation for taking FMLA leave due to his disability in 2009 and 2010.    This is precisely the claim he asserted as a member of the *Moore* class.    The same cause of action requirement is met.

Because Count IV fails on the ground of res judicata, the Court need not reach Frontier's release and statute of limitations defenses.    Count IV is hereby **DISMISSED**.

9

### C.    Counts V and VI—NIED and Outrage

Lastly, Frontier's Partial Motion to Dismiss addresses Plaintiff's claims for NIED (Count V) and outrage (Count VI).   Frontier argues that these claims are precluded by the exclusivity provision of the West Virginia Workers' Compensation Act ("the Act").   W. Va. Code § 23-2-6.

The Act was developed to provide a speedy and expeditious means of compensating injured employers for workplace injuries.   *Meadows v. Lewis*, 307 S.E.2d 625, 638 (W. Va. 1983). To effect that purpose, the Act creates "sweeping immunity" for employers for all tort actions by employees for injuries occurring "in the course of and resulting from employment.'"   *Bias v. Eastern Associated Coal Corp.*, 640 S.E.2d 540, 544 (W. Va. 2006)); *see* § 23-2-6 (providing an employer in compliance with the Act "is not liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring").   The immunity provided by the Act encompasses an action for negligent or intentional infliction of emotional distress.[3]   *See id.* (immunity bars employee's NEID action); *Miller v. City Hosp., Inc.*, 475 S.E.2d 495, 501–02 (W. Va. 1996) (finding plaintiff's claim of outrage fell within scope of Act's immunity provision).

An employer's immunity under the Act is not without limitation, however.   Immunity may be lost if an employer (1) defaults in payments required by the Act or otherwise falls out of compliance with the Act, (2) acts with "deliberate intent" to injure the employee, or (3) "in such other circumstances where the Legislature has by statute expressly provided an employee a private remedy outside the workers' compensation system."   Syl. Pt. 2, *Bias*, 640 S.E.2d at 540.   Plaintiff does not allege facts that Frontier failed to comply with the Act or that his former employer acted

---

[3] In West Virginia, the "tort of outrageous conduct" is also known as intentional infliction of emotional distress.   *See Hines v. Hills Dep't Stores, Inc.*, 454 S.E.2d 385, 389 (W. Va. 1994).

with deliberate intent to cause his injuries.[4]   He invokes the third exception to immunity, arguing

that because his emotional injuries arise from discriminatory conduct, not a workplace injury, the

exclusivity provision is inapplicable.   Plaintiff relies chiefly on *Messer v. Huntington Anesthesia*

*Group, Inc.*, 620 S.E.2d 144 (W. Va. 2005), in advancing this argument.

   The immunity provided by § 23-2-6 is not so easily forfeited.   In *Messer*, the Supreme

Court of Appeals considered whether the Act's exclusivity provision barred an employee's

discrimination claim under the WVHRA for failure to accommodate.   620 S.E.2d at 148.   The

question before the appellate court was whether the employee's recovery for non-physical injuries,

including mental and emotional distress and anguish, was limited to the remedies provided by the

Act.   The court was thus tasked with reconciling the WVHRA, which outlaws discriminatory

practices in employment, with the Act, which "shield[s] the employer from liability outside the

workers' compensation system."   *Id.* at 160.   Importantly, the employee's discrimination claim

in *Messer* was only tangentially related to her workplace injury—the WVHRA claim arose from

the employer's allegedly discriminatory conduct after the injury occurred.   *Id.*

   The Supreme Court of Appeals found no conflict between the two statutes under such

circumstances.   Enforcing the exclusivity clause against the employee, the court reasoned, "would

---

[4] Plaintiff's allegations of outrage, an intentional tort, are insufficient to plead deliberate intention to cause injury.   In order for a claim of outrage to fall outside the Act's immunity provisions, "the plaintiff must plead facts that suggest 'an actual, specific intent.'"   *Councell v. Homer Laughlin China Co.*, 823 F. Supp. 2d 370, 384 (N.D. W. Va. 2011) (quoting *Weirton Health Partners, LLC v. Yates*, No. 5:09cv40, 2010 WL 785647, at *6 (N.D. W. Va. Mar. 4, 2010)).   Allegations of "(i) [c]onduct which produces a result that was not specifically intended; (ii) conduct which constitutes negligence, no matter how gross or aggravated; or (iii) willful, wanton or reckless misconduct" are insufficient."   W. Va. Code § 23-4-2(d)(2)(A).   In support of Count VI, his outrage claim, Plaintiff alleges without elaboration that Frontier's actions were "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency," and that "[Frontier] acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from its conduct."   (Am. Compl. ¶¶ 77–78.)   These allegations are insufficient to plead deliberate intention.   *Councell*, 823 F. Supp. 2d at 384 (granting motion to dismiss intentional infliction of emotional distress claim on identical grounds).

render the WVHRA ineffective and useless to a large group of West Virginians who have compensable work-related injuries." *Id.*  *Messer* held:

> While an aggravation or worsening of an employee's physical injury by the conduct of his/her employer may be compensable under and thus subject to, the exclusive remedy provided by the Workers' Compensation Act, an employee's claim against an employer for violation of the [WVHRA] and resulting non-physical injuries, such as mental and emotional distress and anguish, directly and proximately resulting from such violation and not associated with the physical injury or the aggravation or worsening thereof are not barred by the exclusivity provisions of the Workers['] Compensation Act.

*Id.* at 160–61.

Of course, Plaintiff's NIED and outrage claims do not arise from the WVHRA.[5]  Plaintiff offers an unduly broad reading of *Messer*, contending that causes of action arising from an employer's alleged discriminatory conduct, whether rooted in common law or statute, are outside the reach of the Act's exclusivity provision.   *Messer* does not support Plaintiff's novel interpretation.  *Messer* harmonized two seemingly conflicting statutory schemes, both designed to preserve sound policy interests.   The need to further the objectives of both statutes—the Act and the WVHRA—persuaded the Supreme Court of Appeals to recognize the third, limited exception to the "expansive immunity" that an employer typically enjoys under workers' compensation laws.   For that reason, the holding in *Messer* cannot be divorced from the statutory scheme that compelled the decision in the first place.

The decision in *Bias* further undermines Plaintiff's argument.   In *Bias*, the employee attempted to hold his employer liable for emotional injuries he suffered as a result of being trapped in a mine.   On appeal, the Supreme Court of Appeals considered the certified question of whether

---

[5] Under *Messer*, Plaintiff's disability discrimination claim is not prohibited by the Workers' Compensation Act.   Frontier does not argue otherwise.

an employee who sustains a mental injury without physical manifestation, thereby precluded from

receiving workers' compensation benefits, may nevertheless maintain a common law negligence

action against his employer.   The *Bias* court answered the question in the negative, finding that

the immunity afforded by § 23-2-6 barred the employee's emotional distress claim.   *Bias*

establishes that common law claims for emotional distress, arising from a mental injury allegedly

inflicted by an employer, are subject to the exclusivity provision of the Act.   *Bias* is on all fours

with the instant case.   Plaintiff's attempt to distinguish *Bias* on the basis that the case did not

involve allegations of discrimination is without merit.

     Plaintiff's NIED and outrage claims are barred by the immunity extended to Frontier under

§ 23-2-6.   Counts V and VI fail to state a claim upon which relief can be granted.

*IV.     CONCLUSION*

     For these reasons, the Partial Motion to Dismiss the Amended Complaint is **GRANTED**.

(ECF No. 22.)   Counts I, IV, V, and VI of the Amended Complaint are hereby **DISMISSED**.

     **IT IS SO ORDERED**.

     The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any

unrepresented party.

                       ENTER:        July 19, 2017

                                                 _____

                                          THOMAS E. JOHNSTON
                                          UNITED STATES DISTRICT JUDGE

13
