IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

KERRY FUGATE,

    Plaintiff,

v.                                                     CIVIL ACTION NO. 2:17-cv-00559

FRONTIER WEST VIRGINIA, INC.,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Frontier of West Virginia, Inc.'s ("Frontier") motion for summary judgment.[1] (ECF No. 41.) For the reasons discussed more fully below, the Court **GRANTS** Frontier's motion for summary judgment.

## I.    BACKGROUND

Plaintiff, Kerry Fugate ("Fugate"), began working for Frontier's predecessor company in 1998.[2] (ECF No. 42 at 2.) Beginning in 2008, Fugate began to suffer serious health problems resulting in, on at least one occasion, Fugate requesting and receiving leave under the Family Medical Leave Act of 1993 ("FMLA"). (ECF No. 43 at 1.) Fugate also had several unexcused

---

[1] Also pending in this case are Frontier's motions in limine. (ECF Nos. 47-50.) As this memorandum opinion and order resolves the case, these motions are **DENIED AS MOOT**.
[2] In 2010, Frontier acquired Verizon's landline business and thus Fugate became an employee of Frontier. (ECF No. 42 at 12.)

absences during this time period that resulted in Frontier disciplining Fugate on multiple occasions. (ECF No. 42 at 2 (citing ECF No. 41-1 at 96–97 (Fugate Dep.)).)

Frontier had a step system for disciplining its employees for absences. (ECF No. 43 at 1.) Each time an employee had two unexcused absences, that employee would receive a "Step", an adverse employment action that would be removed from the employee's record after six months if the employee did not have additional unexcused absences during that period. (*Id.*) An employee would be eligible for termination after reaching Step 5. (ECF No. 43 at 1–2.) However, employees would not necessarily move up the Steps in order. (ECF No. 42 at 6 n.3.) For example, if an employee was on Step 1 and had an unexcused absence exceeding three days within six months of the previous incident that placed the employee on Step 1, that employee would move directly to a Step 3. (*Id.*)

Beginning in 2011, Fugate had several unexcused absences that caused him to oscillate between Step 3 and Step 4. (*See* ECF No. 42 at 8–9.) Fugate had requested FMLA prior to taking some of these absences, but his requests were denied. (*Id.* at 9.) On January 2, 2014, Fugate was placed on Step 4 for being absent on December 2, 3, 4, and 5. (*See* ECF No. 41-15 (Employee Contact Mem.).) Fugate had requested FMLA leave for December 2, 3, and 4, but his request was denied. (*See* ECF No. 42 at 10.) Thus, his absence during this time period was classified as unexcused. Fugate then oscillated between Step 3 and Step 4 due to tardiness. (*Id.* at 9.) On December 3, 2014, Frontier placed Fugate on Step 4 for tardiness and informed Fugate that if he had another unexcused absence he could be advanced to Step 5 and thus become eligible for termination. (*See* ECF No. 41-17 (Employee Contact Mem.).)

On January 2, 2015, Fugate left work early to tend to his sick daughter. (ECF No. 42 at 2.) He did not inform a supervisor or seek FMLA leave for this absence. (*See id.*) This unexcused absence resulted in him being raised to a Step 5. (*Id.* at 13.) As a result, Frontier terminated Fugate's employment on January 14, 2015, citing as the cause Fugate's excessive absences after having been warned that further absences would result in disciplinary action. (*Id.*) Fugate, however, argues that he did not know he could not use an "exempt day" for this absence under a plan his union created.[3] (*See* ECF No. 43 at 4.)

Fugate filed the present action against Frontier on January 12, 2017, invoking the Court's federal question jurisdiction under 28 U.S.C. § 1331. Fugate subsequently filed an Amended Complaint on March 16, 2017. (ECF No. 17.) The Amended Complaint alleges the following six counts: retaliatory discharge in contravention of a substantial public policy of the State of West Virginia (count one); interference with FMLA rights and FMLA retaliation (counts two and three); disability discrimination under the West Virginia Human Rights Act, W. Va. Code § 5-11-1 et seq. (count four); negligent infliction of emotional distress ("NIED") (count five); and outrage (count six).

On March 24, 2017, Frontier moved this court to dismiss counts one, four, five, and six of the Amended Complaint. (ECF No. 22.) By memorandum opinion and order issued on July 19, 2017, the Court granted Frontier's partial motion to dismiss and dismissed counts one, four, five, and six of the Amended Complaint. (*See* ECF No. 31.) The case proceeded on Fugate's remaining FMLA interference and retaliation claims. (ECF No. 42 at 2.)

---

[3] The union's plan provided that exempt days could be used for absences due to an employee's personal illness or off duty accident. (*See* ECF No. 41-2 at 129–30 (Union Agreement).)

On December 12, 2017, Frontier filed the present motion for summary judgment. (ECF No. 41.) Fugate filed a timely response, (ECF No. 43), and Frontier filed a timely reply. (ECF No. 44.) As such, Frontier's motion for summary judgment is fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. That rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact." Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When construing such factual issues, the Court must view the evidence "in the light most favorable to the [party opposing summary judgment]." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a party fails to make a sufficient showing on one element

of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

### III. ANALYSIS

In its motion for summary judgment, Frontier argues that Fugate's FMLA interference and retaliation claims were filed outside of the statute of limitations provided in the FMLA. (*Id.* at 13.) Specifically, Frontier argues that the statute of limitations began to run when Frontier last denied Fugate's request for FMLA leave in December of 2013. (*Id.* at 15.) Fugate, however, contends that the statute of limitations did not begin to run until Frontier terminated him in January of 2015. (*See* ECF No. 43 at 6.)

The FMLA makes it unlawful for employers to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2651(a)(1). Additionally, § 2651(b)(1) makes it unlawful for employers to discharge or discriminate against any individual who files a charge under or related to the statute. *See* § 2651(b)(1). For actions brought under this statute, the FMLA further provides the following:

> Except as provided in paragraph (2), an action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought . . . . In the case of such action brought for a willful violation of section 2615 of this title, such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought.

5

29 U.S.C. § 2671(c)(1)–(2). "A willful violation is shown when an employer knew or showed reckless disregard regarding whether its conduct was prohibited." *Settle v. S.W. Rodger Co. Inc.*, No. 98-2312, 1999 WL 486643, at *3 (4th Cir. July 12, 1999) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132–35 (1988)).

The federal circuit courts of appeals disagree as to whether an employee's termination constitutes a "last event" under the FMLA's statute of limitations. *Compare Barrett v. Ill. Dep't of Corr.*, 803 F.2d 893, 894 (7th Cir. 2015) (holding that the statute of limitations began to run when defendant last denied plaintiff's requests for leave and classified the contested absences as unexcused and not when the plaintiff was terminated as a consequence of her overall attendance record), *and Reed v. Lear Corp.*, 556 F.2d 674, 681–82 (8th Cir. 2009) (holding that the statute of limitations began to run when plaintiff was allegedly improperly denied leave because an improper denial of leave constitutes a violation of the FMLA), *with Butler v. Owens-Brockway Plastics Prods. Inc.*, 199 F.3d 314, 317 (6th Cir. 1999) (finding that the last adverse action against the plaintiff was her termination because it was the first action "serious enough to warrant plaintiff's resort to the legal system").

Even the lower courts within the Fourth Circuit have disagreed as to whether termination constitutes a "last event" under the FMLA's statute of limitations. *Compare Sparenburg v. Alliance*, No. 14-cv-1667, 2016 WL 447831, at *2 n.2 (D. Md. Feb. 2, 2016) (stating that the rationale of *Butler*, that the "last event" under the statute of limitations is a plaintiff's termination, was more persuasive than the rationale of *Barrett* that the last event is the last denial of leave (citing *Butler*, 199 F.2d at 317)), *with Marshall v. Donahoe*, No. 12-cv-0431, 2013 WL 597596, at *3 (D. Md. Feb. 15, 2013) (stating that the "last event" for purpose of applying the statute of

6

limitations was when plaintiff was last denied leave). The Fourth Circuit has yet to address this question. However, the Court finds the rationale of *Barrett* persuasive.

In *Barrett*, the plaintiff's employer had a system of progressive discipline for repeated unexcused absences. *Barrett*, 803 F.2d at 894. Plaintiff alleged that her employer improperly denied leave on three occasions which led to the classification of her absences as unauthorized and resulted in her suspension on two separate occasions and the eventual termination of her employment. *Id.* at 895, 896–97. In analyzing whether the plaintiff's claim was barred by the statute of limitations, the Seventh Circuit held that, "[w]hen an FMLA plaintiff alleges that his employer violated the Act by denying qualifying leave, the last event constituting the claim ordinarily will be the employer's rejection of the employee's request for leave." *Id.* at 897. In reaching this conclusion, the Seventh Circuit found that allowing the plaintiff to wait until she was terminated to file her action "would hold the limitations period in abeyance indefinitely and revive a stale denial-of-leave claim years later." *Id.* at 899.

Similarly, here, Frontier had a system of progressive discipline for repeated unexcused absences. *See supra* Part I. Furthermore, similar to the plaintiff in *Barrett*, Fugate alleges that, had Frontier properly approved his absences, he would not have received additional Steps and been terminated. (*See* ECF No. 17 at ¶ 51.) In essence, Fugate's claim is one for denial of leave. Fugate was last denied FMLA leave in December of 2013. (*See* ECF No. 41-1 at 105 (Fugate Dep.).) It was not until over a year later that Frontier terminated Fugate's employment due to Fugate's tardiness and unexcused absences unassociated with his previous requests for FMLA leave. *See supra* Part I. Thus, under the facts of this case, the last event for the purpose of determining the statute of limitations was the last denial of leave and not Fugate's ultimate

7

termination.  As explained in *Barrett*, to hold otherwise would allow FMLA claims stemming from wrongful denial of leave where the employer has a progressive absenteeism policy to be brought years after the last denial of leave when the employee is terminated, regardless of whether the denial of leave precipitated the termination.  This is particularly salient in the present case considering Fugate's termination occurred over a year after the last alleged FMLA violation.

Fugate relies on *Butler* and two unpublished district court opinions from Maryland and South Carolina to argue that the Court should adopt the view that the last event under the FMLA's statute of limitations was Fugate's termination.  (*See* ECF No. 43 at 6–8.)  However, the district court opinions do not analyze or mention the statute of limitations; they simply state that termination is an event for which an interference claim can be brought.  *See Edusei v. Adventist Health Care Inc.*, No. 13-cv-0157, 2014 WL 3345051, at *6 (D. Md. July 7, 2014); *Applegate v. Kiawah Dev. Partners, Inc.*, No. 2:12-cv-738, 2013 WL 3206928, at *10 (D.S.C. June 24, 2013).  Additionally, although *Butler* cites to the FMLA's statute of limitations, unlike *Barrett*, it does not provide an analysis of it and simply finds that the last adverse action against the plaintiff was her termination.  *See Butler*, 199 F.3d at 317.  Therefore, the Court does not find the authority cited by Fugate persuasive on the issue presented in this case.

Having found that the statute of limitations began to run when Frontier last denied Fugate's request for FMLA leave, which took place between December 5, 2013 and January 2, 2014, Fugate's Complaint must have been filed, at the latest, by January 2, 2016.  However, Fugate filed this action on January 13, 2017, outside of the statute of limitations.[4]  Thus, Fugate's action is barred by the statute of limitations.  Accordingly, the Court **GRANTS** Frontier's motion for

---

[4] The result would be the same under the FMLA's three year statute of limitations for willful violations as the Complaint would have had to be filed, at the latest, by January 2, 2017.

summary judgment insofar as it asserts that Fugate's claims are barred by the statute of limitations. As this resolves the case, the Court finds it unnecessary to address the rest of the arguments in Frontier's motion.

## IV. CONCLUSION

For the reasons discussed more fully above, the Court **GRANTS** Frontier's motion for summary judgment. (ECF No. 41.) A separate Judgment Order will be entered reflecting the Court's ruling.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: April 10, 2018

THOMAS E. JOHNSTON, CHIEF JUDGE